UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NAUTILUS INSURANCE COMPANY, | ) ) ) | Case No. 09 C 04654 |
| Plaintiff, | ) ) | Judge Edmond E. Chang |
| v. | ) ) | |
| JONA ENTERPRISES, INC.; JOSEPH KOMES; JOSEPH CACCIATORE & COMPANY; MARQUETTE NATIONAL BANK as Trustee of Trust #14-803; 1100 HUNTER COMPANY; 1100 WEST CERMAK PROPERTY, INC.; and OSVALDO PASTRANA as Independent Administrator of the Estate of Paulino Pastrana, Deceased, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

MEMORANDUM OPINION AND ORDER

Plaintiff Nautilus Insurance Company filed this declaratory-judgment action[1]

to determine whether it has a duty to defend or indemnify Jona Enterprises, Inc. or

Joseph Komes against a state-court wrongful death action filed by Defendant Osvaldo

Pastrana as the administrator of Paulino Pastrana's estate. Defendant Pastrana filed

the state-court action against entities that are defendants in this action too: Joseph

Cacciatore & Company; Marquette National Bank as Trustee of Trust #14-803; 1100

---

[1]This Court has jurisdiction under 28 U.S.C. § 1332(a)(1) because the parties are of diverse citizenship and the amount in controversy exceeds $75,000.

Hunter Company; and 1100 West Cermak Property, Inc.[2] In this action, Nautilus moves for summary judgment. R. 82. Of the seven named defendants, only three have responded to Nautilus's motion: Marquette National Bank, 1100 Hunter Company, and 1100 West Cermak Property (collectively, the "Marquette Defendants").[3] R. 103. The Marquette Defendants filed a cross-motion for summary judgment. R. 113. For the reasons discussed below, Nautilus's motion is granted, and the Marquette Defendants' motion is denied.

## I.

In deciding the parties' cross-motions for summary judgment, the Court views the evidence in the light most favorable to the respective non-moving party. In July 2005, Nautilus issued a commercial general liability insurance policy to Jona Enterprises, a construction company. R. 85, Pl.'s Stmt. of Material Facts (PSOF) ¶¶ 16, 22-23. The policy was effective for one year. *Id.* ¶ 23. In December 2007, Osvaldo Pastrana filed a state-court action against several defendants, including Joseph Cacciatore & Company; Marquette National Bank as Trustee of Trust #14-803; 1100 Hunter Company; and 1100 West Cermak Property, Inc. *Id.* ¶ 9. The complaint in

---

[2]In addition to Joseph Cacciatore & Company, Marquette National Bank as Trustee of Trust #14-803, 1100 Hunter Company, and 1100 West Cermak Property, Inc., there are four other defendants named in the *Pastrana* action, but they are not relevant to this case.

[3]Default orders were entered against Defendants Jona Enterprises, Inc., Joseph Komes, and Osvaldo Pastrana. R. 13, 76. Defendant Joseph Cacciatore & Company appeared in the case, but has not answered the complaint. The district judge previously assigned to this case denied Cacciatore's motion to dismiss for lack of subject-matter jurisdiction [R. 74] on May 26, 2010. R. 80. Cacciatore has not filed anything with the Court since that date and thus is in default for failing to answer the complaint and failing to otherwise defend the case.

2

*Pastrana* alleges that on or about May 27, 2006, Paulino Pastrana died while performing construction work at 1100 West Cermak Road, Chicago, Illinois. *Id.* ¶ 10. *Pastrana* alleges that the named defendant-tortfeasors are liable for Paulino's death under Illinois tort law. *Id.* ¶ 11. (Osvaldo Pastrana is Paulino's son. R. 102-3 (Defs.' Exh. 3).)

In August 2008, Joseph Cacciatore & Company filed, in the state-court action, a third-party complaint against Jona Enterprises. PSOF ¶ 12. Cacciatore alleges that Jona was negligent in supervising Paulino Pastrana, who was allegedly Jona's employee, and, as a result, should pay Cacciatore contribution in an amount commensurate with Jona's assessed percentage of liability for Paulino's injuries. *Id.* ¶¶ 13-14. In November 2008, Marquette National Bank, 1100 Hunter Company, and 1100 West Cermak Property filed a third-party complaint against Jona and its alleged subcontractor, an individual named Joseph Komes. *Id.* ¶ 15. Marquette's third-party complaint alleges that Paulino was employed by Komes at the time of his death, and Jona and Komes were negligent for failing to supervise Paulino and/or to provide him with safe working conditions (among other things). *Id.* ¶ 16. Like Defendant Cacciatore, the Marquette Defendants allege that in the event Pastrana recovers from the Marquette Defendants, the Marquette Defendants are entitled to contribution from Jona and Komes in an amount commensurate with Jona and Komes's respective assessed percentages of liability. *Id.* ¶¶ 16-17.

Gina Prima, the owner of Jona Enterprises, tendered the Cacciatore and Marquette third-party complaints to Nautilus for coverage. R. 115, Defs.' Stmt. of

3

Material Facts (DSOF) ¶¶ 22, 24. In October 2008, Nautilus issued a reservation of rights letter to Prima, stating that Nautilus did not believe that the policy covered Jona in connection with the Pastrana action or the Cacciatore third-party complaint. *Id.* ¶ 25.[4] Nautilus then filed this declaratory judgment action in July 2009. R. 1.

Nautilus seeks a declaration that it owes no duty to defend or indemnify Jona or Komes against the underlying Pastrana action pending in Illinois state court. R. 1 ¶ 34. Nautilus contends that the insurance policy it issued to Jona does not cover the claims against Jona in the Pastrana action. *Id.* ¶¶ 28-31. Specifically, because Paulino Pastrana was Jona's employee, the policy's "Employee Exclusion" precludes any potential or actual coverage for the lawsuit. *Id.* ¶ 28. Nautilus further claims that the result would not be different even if Paulino was considered Komes's employee because the policy's "Contractors and Subcontractors Exclusion" would preclude coverage in that case. *Id.* ¶ 29.

Nautilus has filed a motion for summary judgment. R. 82. The Marquette Defendants were the only named defendants to respond to Nautilus's motion. *See* R. 103. The Marquette Defendants also filed a cross-motion for summary judgment,

---

[4]Nautilus states that it did not receive notice of the Marquette Defendants' third-party complaint until April 2009, when it received a letter from Marquette's counsel informing Nautilus that it filed a third-party complaint in *Pastrana*. *See* R. 118 (Pl.'s Resp. Br.) at 10-11; R. 118-1, Pl.'s Exh. 1; *see also* R. 120 (Pl.'s Resp. to DSOF) ¶¶ 24-26. Nautilus states that it did not issue a second reservation of rights letter to Jona; instead, Nautilus responded by filing the instant action against Jona and the other Defendants three months after receiving notice of the Marquette third-party complaint. The Marquette Defendants claim that Nautilus received notice of the Marquette third-party complaint in 2008, but their citations to the record simply confirm that Prima tendered both third-party complaints to Nautilus (the date of tender is not specified). *See* DSOF ¶ 24. It is undisputed that Nautilus has retained counsel for Jona and Komes in *Pastrana* under the reservation of rights letter. *Id.* ¶ 28.

seeking a declaration that Nautilus *does* have a duty to defend and indemnify Jona and Komes in the underlying Pastrana action. R. 113.

## II.

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The same standard applies to cross-motions for summary judgment. *Int'l Bhd. of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All facts, and any inferences to be drawn from them, must be viewed in the light most favorable to the non-moving party. *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008).

In this diversity action, state law governs the substance of Nautilus's claim. *See Integrated Genomics v. Gerngross*, 636 F.3d 853, 861 (7th Cir. 2011). The parties assume that Illinois law governs, and the Court will proceed on that basis.[5] *See Health Care Indus. Liability Ins. Program v. Momence Meadows Nursing Ctr.*, 566 F3d 689, 693 (7th Cir. 2009).

---

[5]The insurance policy does not contain a choice-of-law provision. *See* R. 1-2, Exh. D attached to Complaint.

## III.

The insurance policy at issue in this case is between Nautilus and Jona Enterprises.[6] Neither Jona nor Komes (the proprietor of Jona) have defended against Nautilus's claim that the policy does not cover the *Pastrana* case. The other Defendants in this action – Joseph Cacciatore & Company, Marquette National Bank, 1100 Hunter Company, and 1100 West Cermak Property – are *not* parties to the insurance contract. Whether these strangers to the contract have a right to enforce the policy was not addressed in the parties' summary judgment brief, and the Court called for supplemental briefing on the issue. R. 133. Nautilus and the Marquette Defendants filed supplemental briefs. R. 134, 135.

First, Nautilus responds that it only named the Cacciatore and Marquette Defendants "out of an abundance of caution," and now realizes that these Defendants actually do *not* have a right to enforce the insurance policy between Nautilus and Jona. R. 134 at 1-2. Indeed, Illinois law provides that "[t]here is a strong presumption that the parties to a contract intend that the contract's provisions apply only to them, and not to third parties." *Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 924 (Ill. App. Ct. 2009). There are exceptions to this general rule (as is true for most legal rules). For instance, in Illinois, injured members of the general public are considered beneficiaries of liability insurance policies. *See Reagor v. Travelers Ins. Co.*, 415 N.E.2d

---

[6]In August 2006, Defendant Joseph Komes's name was added to the insurance policy, but only to the extent that he was doing business as Jona Enterprises. *See* R. 1-2, Exh. D attached to Complaint.

6

512, 514 (Ill. App. Ct. 1980). "Illinois public policy dictates that insurance is not necessarily a private matter between an insurer and its insured, and as such, an injured party's rights against the liability insurer vest at the moment of the accident giving rise to the underlying claim." *State Farm Fire & Cas. Co. v. Perez*, 899 N.E.2d 1231, 1234 (Ill. App. Ct. 2008) (citations and quotation omitted). "Such vested rights may not be defeated by the joint efforts of the insured and insurer." *Id.* So the alleged tort victim, Paulino Pastrana (or more specifically, his representative, Osvaldo Pastrana) could seek to enforce the policy between Nautilus and Jona. Nautilus argues, however, that the "injured victim" public-policy exception does not apply to the Cacciatore and Marquette Defendants in this case. According to Nautilus, these Defendants may not seek to enforce Jona's coverage (if any) under the insurance contract.

The Marquette Defendants argue that they have a right to enforce the contract because they are third-party plaintiffs in the underlying Pastrana action. R. 135. They cite *Record-a-Hit v. National Fire Insurance Company of Hartford*, 880 N.E.2d 205, 207 (Ill. App. Ct. 2007), as support for their position. R. 135 at 6-7. However, the plaintiff in *Record-a-Hit* alleged that it had been injured by the insured's tortious conduct. 880 N.E.2d at 206-07. Thus, the injured plaintiff – as a beneficiary of the insurance policy – had a sufficient relationship with the insurer to enable it to litigate the scope of coverage afforded to the tortfeasor. *Id.* at 207-08. But here the Marquette Defendants do not stand in the same intended-beneficiary shoes as the victim, Pastrana. Rather, the Marquette Defendants are alleged co-tortfeasors. They do not cite any case in

7

which alleged co-tortfeasors were permitted to enforce an insurance policy. Nor do they explain any public-policy reason for such enforcement akin to the reason why Illinois permits victims of an insured's contract to enforce the contract. Indeed, allowing alleged tortfeasors to enforce the insured's contract in contribution cases like this one could have the adverse effect of encouraging individuals or corporations to *not* obtain insurance themselves, or to under-insure by purchasing policies with less coverage, in the hope that a co-tortfeasor's policy would provide coverage.

For these reasons, the Court concludes that the Marquette Defendants cannot enforce the insurance policy between Nautilus and Jona. The Marquette Defendants' motion for summary judgment is denied, and Nautilus's motion is granted.

## IV.

Even if the Marquette Defendants could sue to enforce the insurance policy, the Court would conclude that, under the policy's terms, Nautilus is not obligated to defend Jona with respect to the third-party complaints filed against Jona in the Pastrana lawsuit. "Under Illinois law, the interpretation of an insurance policy is a question of law that is properly decided by way of summary judgment." *Twenhafel v. State Auto Prop. & Cas. Ins. Co.*, 581 F.3d 625, 628 (7th Cir. 2009) (citation omitted). An insurance policy is a contract and subject to the general rules of contract construction. *Hobbs v. Harford Ins. Co. of the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005).

"In Illinois, an insurer has a broad duty to defend its insured in any action where the allegations in the complaint are even potentially within the scope of the policy's coverage." *Nat'l Cas. Co. v. Forge Indus. Staffing Inc.*, 567 F.3d 871, 874 (7th

Cir. 2009). Therefore, when deciding "whether an insurer has a duty to defend" courts examine "the underlying complaint and the language of the insurance policy." *Nat'l Cas. Co. v. McFatridge*, 604 F.3d 335, 338 (7th Cir. 2010); *see also Ace Am. Ins. Co. v. RC2 Corp.*, 600 F.3d 763, 766 (7th Cir. 2010). Nautilus may justifiably refuse to defend only if it is clear from the underlying complaints that the alleged incident does not fall within, or potentially within, the policy's coverage. *Nautilus Ins. Co. v. 1452-4 N. Milwaukee Ave., LLC*, 562 F.3d 818, 821 (7th Cir. 2009) (citing *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1212 (Ill. 1992)).

Here, Nautilus argues that it has no duty to defend Jona in the Pastrana litigation because two exclusions in the insurance contract preclude coverage for the claims against Jona in the Cacciatore and Marquette Defendants' third-party complaints. First, the Cacciatore third-party complaint alleges that Jona employed Paulino Pastrana at the time of the accident that resulted in Paulino's death. R. 85-2, Pl.'s Exh. B (Cacciatore Compl.) ¶ 4. The insurance policy issued to Jona contains an exclusion for liability to an employee. PSOF ¶ 27; R. 85-5, Pl.'s Exh. E (Insurance Policy). Specifically, this Employee Exclusion provides that the insurance policy does *not* apply to:

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

> (a) Employment by the insured; or
> (b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

PSOF ¶ 27. With respect to the Employee Exclusion, an "'employee' shall include, but is not limited to, any person . . . hired by, loaned to, leased to, contracted for, or volunteering services to the insured, whether or not paid by the insured." *Id.*

The Marquette Defendants' third-party complaint first names Jona and Joseph Komes as third-party defendants in the Pastrana lawsuit. R. 85-3, Pl.'s Exh. C (Marquette Compl.).[7] The Marquette Defendants allege that they entered into a contract with Jona in March 2006. Pursuant to the contract, Jona was to provide construction services on a project at 1100 West Cermak Road. The Marquette Defendants allege that Jona, in turn, hired Komes as a subcontractor to perform the construction work. According to Marquette's third-party complaint, Pastrana was employed by Komes at the time he was injured in May 2006. The insurance policy also contains an exclusion for contractors and subcontractors. PSOF ¶ 28; R. 85-5, Pl.'s Exh.

---

[7]The Marquette Defendants attached the Second Amended Third Party Complaint filed in the Pastrana action to their supplemental summary judgment brief, *see* R. 135-1, Defs.' Exh. A (Marquette Second Am. Compl.). The Second Amended Complaint adds Jona Enterprises and Jona Enterprises, LLC as named third party defendants, but does not modify the allegations at issue in the present litigation – namely, whether Paulino Pastrana was an employee of Jona. Like the original third-party complaint, Marquette's amended complaint alleges that Paulino was employed by Jona's subcontractor, Joseph Komes, at the time he was injured. And the allegations pertaining to Jona and Komes's negligence in paragraph 15 of the original third-party complaint remain exactly the same in the amended version (see Marquette Second Am. Compl. ¶ 16).

E (Insurance Policy). It states that "[t]his insurance does not apply to 'bodily injury' . . . arising out of operations performed for you by contractors or subcontractors you hire or your acts or omissions in connection with your general supervision of such operations." *Id.*

Nautilus first argues that it need not defend or indemnify Jona in connection with the third-party complaints filed in *Pastrana* because, in light of the Employee Exclusion, Paulino Pastrana's fatal injuries are not within the policy's coverage. The Cacciatore third-party complaint clearly alleges that Paulino sustained bodily injury while employed by Jona. Cacciatore alleges that Jona was negligent for failing to supervise Paulino's work. Thus, the facts alleged in the Cacciatore third-party complaint demonstrate that Paulino qualified as an "employee" under the definition of the Employee Exclusion. The Court concludes that Nautilus does not have a duty to defend or indemnify Jona in connection with the Cacciatore third-party complaint.

Next, Nautilus argues that although the allegations in the Marquette (as distinct from the Cacciatore) third-party complaint posit Paulino Pastrana as an employee of Jona's subcontractor (rather than Jona itself), the Employee Exclusion still precludes coverage. Nautilus argues that Paulino falls within the Employee Exclusion's definition of "employee" because Paulino was a person Jona "contracted for" to perform work on the 1100 West Cermak construction project. R. 84 at 6. Nautilus urges the Court to follow the reasoning employed by the majority in *Nautilus Insurance Company v. Matthew David Events, Ltd.*, 893 N.Y.S.2d 529 (N.Y. App. Div. 2010). In that case, the court agreed with Nautilus's position that "the 'contract for' language of

11

the Employee Exclusion clearly contemplates that a contractor could be retained by a party other than the insured on the insured's behalf, and that an injury to the contractor or its employee would fall within the scope of the exclusion." *Id.* at 532. The court reasoned that if it were to interpret the "contract for" language to apply *only* to persons who contract directly to work for the insured, then the explanatory language that the term "employees" includes those providing "services to the insured, whether or not paid by the insured" would be rendered a nullity. *Id.*

Here, Nautilus reasserts the position it took in *Matthew David Events*, and argues that the inclusion of persons "volunteering services" in the definition of "employee" indicates that unpaid workers may qualify as "employees." R. 84 at 6. Thus, Nautilus argues that the phrase "whether or not paid by the insured" is meaningful only if it is interpreted as encompassing workers who are paid by subcontractors (rather than by Jona) to perform the work. *Id.*; *see Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1023 (Ill. 2010) (courts "will not interpret an insurance policy in a way that any of its terms are rendered meaningless or superfluous"). Indeed, Marquette claims that at the time Pastrana was injured, he "was an employee of [Komes]." R. 85-3 ¶ 10. Komes was working on the site because Jona had contracted with Komes. Thus, Nautilus argues that, under the insurance policy, Pastrana is an "employee" of Jona. As such, Nautilus is not obligated under the policy to indemnify or defend Jona against Marquette's claim for contribution.

The Court agrees. The Employee Exclusion's definition of "employee" is broad. It includes, but is not limited to, any person contracted for, regardless of whether they

12

were paid by the insured. This definition is specific to the Exclusion, and replaces the general definition in Part 5 of the contract, which simply states that an "'employee' includes a 'leased worker' [and] does not include a 'temporary worker.'" *See* R.1-2. In order to determine whether Nautilus has a duty to defend Jona, the Court must compare this language from the insurance policy to the factual allegations of Marquette's third-party complaint. *Amerisure Mut. Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, 810 (7th Cir. 2010). The question here is whether the policy excludes coverage for bodily injury to an employee of the insured's subcontractor. The Court concludes that it does. Reading the policy as a whole, it is clear that the parties intended to expand the definition of "employee" for purposes of the Employee Exclusion. Marquette alleges that Jona contracted for Komes's services as a subcontractor. The policy clearly states that "employees" are not limited to just those directly hired by the insured. Rather, the definition includes persons that the insured *contracted* for, whether or not the person is on the insured's payroll. In light of this exclusion, Nautilus does not have a duty to defend the underlying complaint against Jona.

Alternatively, Nautilus argues that even if Marquette's allegations do not fall within the Employee Exclusion, Nautilus does not have a duty to defend or indemnify Jona because the Subcontractor Exclusion precludes coverage. The Court again agrees. To repeat, the Subcontractor Exclusion provides that "[t]his insurance does not apply to 'bodily injury' . . . arising out of operations performed for [Jona] by contractors or subcontractors [Jona] hire[s] or [Jona's] acts or omissions in connection with [Jona's]

13

general supervision of such operations." DSOF ¶ 28. The underlying third-party complaint explicitly alleges that Jona "subcontracted out the work it contracted to do for [the Marquette Defendants] to Joseph Komes." R. 85-3 ¶ 7. The Marquette Defendants further allege that Jona provided the construction services *through its subcontractor Joseph Komes. Id.* ¶ 8. Thus, to the extent that the Marquette Defendants allege that damages arise out of Komes's conduct or Jona's conduct in managing or supervising Komes, coverage is precluded by the Subcontractor Exclusion. The list of Jona's alleged negligent conduct included in paragraph 15 of Marquette's original third-party complaint contains nothing more than variations of alleged negligent actions taken by Jona in connection with its general supervision of Komes's work on the construction site.

In short, the underlying third-party complaints fail to make allegations that either actually or potentially bring the cases within the insurance policy's coverage. Nautilus has no duty to defend Jona against the claims in the underlying suit. And because Nautilus has no duty to defend, it also has no duty to indemnify. *See Nat'l Cas. Co. v. McFatridge*, 604 F.3d 335, 338 (7th Cir. 2010) ("If an insurer has no duty to defend, it has no duty to indemnify.").

## V.

For the reasons stated above, Nautilus's motion for summary judgment [R. 82] is granted. The Marquette Defendants' motion for summary judgment [R. 113] is denied.

14

The Court also enters default judgment in favor of Nautilus and against Defendants Jona Enterprises, Inc.; Joseph Komes; Joseph Cacciatore & Company; and Osvaldo Pastrana as Independent Administrator of the Estate of Paulino Pastrana, Deceased. As stated above, Defendants Jona, Komes, and Pastrana failed to appear or defend against this action and the district judge previously assigned to this case entered a default order as to these defendants on September 25, 2009. R. 13. Defendant Cacciatore appeared in the case, but has not answered the complaint or otherwise defended the lawsuit since its motion to dismiss was denied by the Court in May 2010. Accordingly, Nautilus's request for entry of default judgment against Defendants Jona, Komes, Cacciatore, and Pastrana is granted.

ENTERED:

_____
Honorable Edmond E. Chang

DATE: January 30, 2012

15